# Staunton

## Hawkeye-Security Insurance Company v. Robert McDaniel, Et Al.

September 5, 1969.

Record No. 7023.

Present, All the Justices.

*Robert L. Ellis (Siciliano, Daly & Ellis*, on brief), for appellant.

*W. W. Whitlock, Nathaniel S. Newman (William E. McLaughlin; May, Garrett, Miller and Newman*, on brief), for appellees.

GORDON, J., delivered the opinion of the court.

The issue in this case is whether the appellant, Hawkeye-Security Insurance Company, or the appellee, Bituminous Casualty Company, must pay compensation to Robert McDaniel for his disability beginning April 24, 1967 resulting from an occupational disease.

McDaniel, a cement finisher, contracted a severe dermatitis on July 12, 1963 when his skin came in contact with "hot" cement. This disease caused McDaniel to be incapacitated from time to time during the period July 12, 1963—September 11, 1966 and to be continuously incapacitated after April 24, 1967.

McDaniel was working for a general contractor on July 12, 1963 and continued in his employ until April 24, 1967. Hawkeye-Security was the employer's workmen's compensation carrier on July 12, 1963. Hawkeye-Security terminated its policy on December 1, 1965, and Bituminous Casualty assumed the risk on December 21, 1965.

Hawkeye-Security paid McDaniel compensation for each period of disability between July 12, 1963 and September 11, 1966.[1] It refused, however, to pay compensation for the period of disability beginning April 24, 1967, contending that Bituminous Casualty was liable. So the Industrial Commission was called upon to decide which insurance company was liable.

The Commission found that the diagnosis of McDaniel's occupational disease was first communicated to him in 1963. So under Code § 65.1-49[2] McDaniel is deemed to have then suffered an "injury by

---

[1] The Industrial Commission made awards pursuant to consent agreements between Hawkeye-Security and McDaniel.

[2] "§ 65.1-49. Provisions in respect to injury by accident, etc., applicable to occupational disease.—When the employer and employee are subject to the provisions of this Act, first communication of the diagnosis of an occupational disease to the employee or death of the employee resulting from an occupational disease as herein listed and defined shall be treated as the happening of an injury by accident, or death by accident, and the employee or in case of his death his dependents shall be entitled to compensation as provided by the Act. An employee who has an occupational disease that is covered by this Act shall be entitled to the same hospital, medical and miscellaneous benefits as an employee who has a compensable injury by accident, except that the period during which the employer shall be required to furnish medical attention shall begin as of the date of first communication of the diagnosis of the occupational disease to the employee, and in the event of death the same funeral benefits shall be paid as in the case of death from a compensable accident. All provisions of the Act in respect to accidents shall be applicable to the coverage provided for by this chapter, except as otherwise provided herein. The provisions of this section, as amended, shall be applicable to occupational diseases contracted before and after July one, nineteen hundred sixty-six." Va. Code Ann. § 65.1-49 (Repl. vol. 1968).

accident", entitling him to compensation for disability resulting from the occupational disease. Va. Code Ann. §§ 65.1-7, -54, -55 (Repl. vol. 1968).

The Commission found that the dermatitis contracted and diagnosed in 1963 has never been cured; that the existing disease was aggravated each time McDaniel returned to work after a period of disability. Treating the 1967 aggravation as a change of condition in the disease contracted in 1963, the Commission awarded additional compensation under Code § 65.1-99[3] for the disability beginning April 25, 1967.

Since McDaniel was last exposed to the causative hazard of the disease (cement) on April 24, 1967, Hawkeye-Security contends that Bituminous Casualty, the employer's carrier at that time, should have been required to pay compensation for the disability beginning April 25, 1967. To support that contention, Hawkeye-Security relies upon Code § 65.1-50 which provides:

"§ 65.1-50. What employer and carrier liable.—When an employee has an occupational disease that is covered by this Act, the employer in whose employment he was last injuriously exposed to the hazards of the disease and the employer's insurance carrier, if any, at the time of the exposure, shall alone be liable therefor, without right to contribution from any prior employer or insurance carrier."

Va. Code Ann. § 65.1-50 (Repl. vol. 1968). We agree with the Commission, however, that Code § 65.1-50 does not apply to this case.

Code § 65.1-50 has no relevance to a change in condition, that is, the aggravation of an existing occupational disease for which compensation has been previously awarded. Rather, the statute applies to

Effective October 1, 1968, Title 65 of the Code was repealed, and the Virginia Workmen's Compensation Act was recodified as Title 65.1. But since the recodification made no material change in any of the sections cited in this opinion, references are to the recodified sections.

[3] "§ 65.1-99. Review of award on change of condition.—Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Industrial Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this Act, and shall immediately send to the parties a copy of the award. No such review shall affect such award as regards any moneys paid but no such review shall be made after twelve months from the last day for which compensation was paid, pursuant to an award under this Act." Va. Code Ann. § 65.1-99 (Repl. vol. 1968). For a definition of "change of condition", see Va. Code Ann. § 65.1-8 (Repl. vol. 1968).

a case where no diagnosis of an occupational disease has been made and communicated to the employee *before* he was last injuriously exposed to the hazards of the disease. In such a case, it is uncertain when the employee contracted the disease and, consequently, uncertain which of successive employers or successive insurance carriers should be liable for compensation. The statute resolves the doubt by imposing liability upon the employer for whom the employee was working at the time of the last injurious exposure to the hazards of the disease and by imposing liability upon the insurer who was then underwriting the risk.

The Workman's Compensation Act gives McDaniel the right to receive compensation only for disability resulting from injury by accident. Va. Code Ann. §§ 65.1-7, -54, -55 (Repl. vol. 1968). McDaniel's only "injury by accident" happened in 1963, when the diagnosis of his occupational disease was first communicated to him. Va. Code Ann. § 65.1-49, *supra* n. 2. The aggravation of McDaniel's disease in 1967 was not a new "injury by accident", but rather a change in the condition of the disease contracted in 1963. Since Hawkeye-Security was underwriting the risk in 1963, the Commission properly held it liable for the additional compensation awarded for the disability in 1967.

The only remaining question of any substance is whether the Commission should have ordered Hawkeye-Security to pay the fee allowed McDaniel's counsel. The Act authorizes the Commission to assess a reasonable attorney's fee against the employer's insurance company if it defends a claim "without reasonable grounds". Va. Code Ann. § 65.1-101; *see* Va. Code Ann. § 65.1-3 (Repl. vol. 1968). Finding that Hawkeye-Security had reasonable grounds for defending this proceeding, the Commission ordered that the fee allowed McDaniel's counsel be deducted from the additional compensation awarded McDaniel. We find no error in that order.

*Affirmed.*